**Albert GINSBERG, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 82–1088.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1982.

Decided May 12, 1983.

Charles A. Trainum, Jr., Washington, D.C. (Michael A. Gordon, Glassie, Pewett, Dudley, Beebe & Shanks, P.C., Washington, D.C., on brief), for appellant.

Thomas H. Pacheco, Dept. of Justice, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Linda B. Bridgman, Asst. U.S. Atty., Alexandria, Va., Dorothy R. Burakreis, Dirk D. Snel, Dept. of Justice, Washington, D.C., on brief), for appellee.

Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and BLACK,* District Judge.

* The Honorable Walter E. Black, Jr., United States District Judge for the District of Mary-  land, sitting by designation.

WALTER E. BLACK, Jr., District Judge.

On January 15, 1970, the United States through the General Services Administration (GSA) entered into a 20-year lease with Martin Van Buren Corporation, the predecessor in title of plaintiff, Albert Ginsberg, for certain space in an office building in Arlington, Virginia. Plaintiff purchased the building on December 19, 1979, and agreed to be bound by the terms of the lease.

Under the terms of the lease, the annual rental rate was to be adjusted at the end of the first ten years of government occupancy to provide for escalation of certain operating costs and real estate taxes. The escalation rate was to be negotiated and determined on the basis of cost data to be submitted to GSA. The lease also provided that the lessor allow GSA to audit his books of account relative to the lease. Negotiations ensued between the parties, but no resolution of the dispute as to the amount due Ginsberg was ever reached. The United States has conceded that the amount of escalation due is estimated to be approximately $500,000.

On July 21, 1981, Ginsberg filed a complaint in the United States District Court for the Eastern District of Virginia, alleging jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2), the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Quiet Title Act, 28 U.S.C. § 2409a, and requesting the court to declare that the United States had breached its lease, constituting a denial of Ginsberg's due process property rights, and that it could not continue to occupy Ginsberg's property without just compensation to him, and to quiet title to the leased premises by awarding Ginsberg possession or just compensation for past and continued unlawful possession.

The United States filed a motion to dismiss based on failure to exhaust administrative remedies and lack of jurisdiction over the subject matter. This motion was granted by the district court, which found lack of subject matter jurisdiction under the Tucker Act because, although the claim was based upon a contract with the United States, the relief sought was primarily other than money damages, and under the Quiet Title Act, because that Act does not contemplate claims for breach of contract. This appeal followed, in which Ginsberg presses only his claim for relief under the Quiet Title Act, presumably because his remedy under the Tucker Act is limited to damages not exceeding $10,000, by the provisions of 28 U.S.C. § 1346(a)(2), with his remedy for damages in the amount sought lying solely in the Court of Claims. 28 U.S.C. § 1491.

The Quiet Title Act, 28 U.S.C. § 2409a(a), provides as follows:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to ... or affect actions which may be or could have been brought under section[s] 1346 ... of this title [the Tucker Act] ....

Jurisdiction of civil actions under the Act is conferred on the district courts by 28 U.S.C. § 1346(f), which provides as follows:

> The district courts shall have exclusive jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

■ It is well-established that "[the] United States, as sovereign, is immune from suit save as it consents to be sued [citations omitted] and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). The terms under which the United States consents to be sued "must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). *See also Shinaberry v. United States,* 142 F.Supp. 413, 414 (W.D.Mich. 1956) ("Any doubts as to consent or jurisdic-

tion of the court should be resolved in favor of the United States."), *aff'd,* 242 F.2d 758 (6th Cir.1957), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957).

■ The language of 28 U.S.C. § 2409a(a) requires that the claim here involve "a disputed title to real property in which the United States claims an interest," but this "plainly contemplates litigation against the United States to adjudicate disputes about lesser interests, such as . . . the Government's lease." *United States v. Bedford Associates,* 657 F.2d 1300, 1316 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). Nevertheless, it must be determined whether the Government's leasehold interest here creates "a disputed title to real property," where the disagreement between the parties arises from contractual obligations created by the terms of the lease allegedly breached by the United States. The plain meaning of the words of the statute, namely, "disputed title to real property" do not convey the intention to involve situations where there is privity of contract between the United States as tenant and its landlord, since the dispute over an alleged breach of contract hardly casts doubt on the title or ownership of the property.[1]

This interpretation of the words of the statute is supported by its legislative history. In *Prater v. United States,* 612 F.2d 157, 159 (5th Cir.1980), the court recognized that

[t]he legislative history of section 2409a also indicates that Congress meant to permit actions which may not have been properly labeled as actions to quiet title at common law.

Nevertheless, the House Report reflected that the roots of the statute originated in the Equity Courts of England in suits to quiet title or to remove a cloud on title, and recognized that "the most common application of the proposed statute would be in boundary disputes between the United States and owners of adjacent property." H.R.Rep. No. 92–1559, 92d Cong. 2nd Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Ad.News 4547, 4551–2.

No case has come to the attention of the court in which a dispute between a landlord and the United States as tenant has been the basis for maintaining an action under the Quiet Title Act. Ginsberg has placed great weight on a series of decisions in *United States v. Bedford Associates,* 618 F.2d 904 (2d Cir.1980), *aff'd in part, remanded in part prior S.D.N.Y. decision;* 491 F.Supp. 848 (S.D.N.Y.1980), *decision on remand; aff'd in part, rev'd in part, and remanded,* 657 F.2d 1300 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). These decisions are clearly distinguishable in that they involved the foreclosure of a mortgage where the United States was tenant of a building where the mortgagor was the United States' landlord, and indeed, there was no privity of contract whatever between the United States and the mortgagee.[2]

■ Ginsberg is further foreclosed from pursuing his claim for breach of contract under the Quiet Title Act by the express provisions thereof that it does not apply to or affect actions which can be brought under the Tucker Act, and the fact that the Tucker Act provides a remedy for disputes arising under leases with the United States. *Boccardo v. United States,* 341 F.Supp. 858 (N.D.Cal.1972).

■ The Tucker Act remedy in the Court of Claims remains Ginsberg's only remedy, even though he is seeking possession of the premises. "That the Court of Claims can-

---

**1.** It should be noted that the United States here does not regard this dispute as involving breach of contract, but rather as a claim for relief under the escalation clause of the lease and, accordingly, subject to the procedures mandated by the disputes clause of the lease.

**2.** This Court's *en banc* decision in *Fulcher v. United States,* 632 F.2d 278 (4th Cir.1980), is

also distinguishable since it involved a suit under the Quiet Title Act, where the plaintiff claimed that he was the true owner of property condemned by the Government, for which another person had been compensated. Accordingly, there was no privity of contract between the parties.

not provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *American Science & Engineering, Inc. v. Califano,* 571 F.2d 58, 62 (1st Cir.1977).[3]

■ Ginsberg has cited Virginia authority in support of his use of a quiet title action as a remedy, but his reliance upon Virginia law is misplaced for two reasons: (1) he concedes that the Virginia courts have not decided whether breach of a lease gives rise to a quiet title action; and (2) the meaning of the phrase "adjudicate a disputed title" in the Act presents a federal question to be answered in accordance with federal law. *United States v. Bedford Associates,* 657 F.2d 1300, 1316 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982).

For the reasons stated, the district court lacked subject matter jurisdiction under the Quiet Title Act, as well as under the Tucker Act. Accordingly, it is unnecessary for this court to consider whether there has been a failure to exhaust administrative remedies.

AFFIRMED.

---

**3.** In any event, money damages would probably be the only remedy available in this case, since the United States has an option under 28 U.S.C. § 2409a(b) to retain possession of the premises upon payment of just compensation.