**LEISNOI, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 97–36006.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1999.

Decided March 19, 1999.

Edgar Paul Boyko and Robert L. Breckberg, Edgar Paul Boyko & Associates, Anchorage, Alaska, for plaintiff-appellant.

Sean H. Donahue, United States Department of Justice, Environmental & Natural Resources Division, Washington, DC, for defendant-appellee.

Before: CANBY and GRABER, Circuit Judges, and MARSHALL,[1] District Judge.

Opinion by Judge CANBY; Concurrence by Judge GRABER.

CANBY, Circuit Judge:

Plaintiff, Leisnoi, Inc., brought this action under the Quiet Title Act, 28 U.S.C. § 2409a, to quiet title against the United States in property conveyed to Leisnoi as a Native village corporation pursuant to the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1601 *et seq.* The peculiar circumstances of this case present us with only one

1. The Honorable Consuelo Bland Marshall, United States District Judge for the Central District of California, sitting by designation.

issue, which may be stated in the alternative: Did the district court acquire no jurisdiction at all, or did it acquire jurisdiction to enable it to confirm the United States' disclaimer of title and then to dismiss for lack of jurisdiction? We conclude that, at the time it acted, the district court correctly held that it had acquired no jurisdiction at all.

### BACKGROUND

As a certified Native village corporation, Leisnoi is eligible to receive conveyances of the surface estate in lands from the federal government from areas withdrawn for Native selection pursuant to ANCSA. Leisnoi received such lands from the United States. Its procedural difficulties in this case arise from the fact that its title to those lands is challenged, not by the United States itself, but by a third party on behalf of the United States.

In 1976, a private party, Stratman, and several other Kodiak Island residents filed an action, known as the "decertification" litigation, in federal district court. The Stratman plaintiffs claimed that Leisnoi did not qualify as a Native village under ANCSA, and that Leisnoi consequently must return to the federal government the lands that it had received under ANCSA. The United States conveyed Termination Point to Leisnoi by patents and interim conveyances in 1985. While the decertification action was pending in federal court, Stratman recorded in the Kodiak Island land records a notice of *lis pendens,* on behalf of the United States, covering Leisnoi's lands, including Termination Point.[2]

Leisnoi now wishes to sell Termination Point to the Exxon Valdez Oil Spill Trustees ("Trustees"). A sale has not been consummated, however, apparently because the Trustees seek assurance that title to Termination Point will never revert to the United States. To that end, Leisnoi has moved in two directions.

First, Leisnoi filed a quiet title action against Stratman in the Alaska Superior Court. On April 1, 1997, that court entered judgment quieting title to Termination Point in Leisnoi, "removing any clouds Omar Stratman has placed upon the title thereto," forever barring Stratman from asserting title for himself or others, and denying him standing to challenge the conveyance to Leisnoi by the United States. Final Judgment, No. 3AN 96–00502 cf (Superior Court, 3d Jud. Dist. April 1, 1997).[3] The Trustees, however, maintained that quieting the title against Stratman did nothing to guarantee that the United States would not reacquire Termination Point if the pending decertification proceedings turned out adversely to Leisnoi.

Leisnoi accordingly brought this action against the United States under the Quiet Title Act, which authorizes suit against the United States "to adjudicate a disputed title to real estate in which the United States claims an interest." 28 U.S.C. § 2409a(a). In its complaint, Leisnoi alleged that the United States had no interest in Termination Point. Leisnoi sought

> [a]n order quieting [Leisnoi's] title to the surface estate of [Termination Point] as against the United States, declaring that [Leisnoi] owns the surface estate of the property in fee simple, free and clear of any property interest, claim, or constructive trust of the United States except for those property interests retained or reserved on the face of the patents and/or interim conveyances or statutorily reserved, and that the United States, its agencies, and persons acting on its behalf cannot now sue to nullify, cancel, or rescind the patents and interim conveyances or to impose a constructive trust thereupon.

In its answer, the government admitted that it had issued patents conveying Termination Point to Leisnoi. The government then argued that, because it claimed no interest in the property, except for the interests (such as easements) expressly reserved in the patents and except for statutory restric-

---

**2.** The federal court subsequently referred the decertification matter to the Interior Board of Land Appeals, where it is still pending.

**3.** Stratman appealed this judgment, and it was reversed, but not until after the district court had

dismissed the present action. *Stratman v. Leisnoi, Inc.,* 969 P.2d 1139 (Alaska 1998). We will refer to this decision of the Alaska Supreme Court later in our discussion.

tions that the parties agree are not at issue here, the court lacked initial subject matter jurisdiction over Leisnoi's claim under the Quiet Title Act. Nonetheless, as a precautionary measure, in the event that the district court had subject matter jurisdiction, the government filed a formal "Disclaimer of Interest" with its answer. The Quiet Title Act provides that, upon filing of such a disclaimer by the United States, the district court, after confirming the disclaimer, must dismiss for lack of jurisdiction. 28 U.S.C. § 2409a(e).

The district court refused to confirm the government's disclaimer of interest, concluding instead that the court lacked initial subject matter jurisdiction. Leisnoi sought reconsideration of this ruling because it viewed the government's disclaimer as the goal of its litigation; Leisnoi believed that such a disclaimer, confirmed by the court, would clear the cloud on Leisnoi's title. With the court's permission, Leisnoi then introduced an affidavit describing the situation surrounding the *lis pendens* and Leisnoi's inability to sell Termination Point to the Trustees with that "cloud" on the title. The district court again denied Leisnoi's motion for confirmation of the disclaimer on the ground that the court lacked initial subject matter jurisdiction.

Accordingly, the district court ordered that the action be dismissed. This timely appeal ensued and we now affirm.

## ANALYSIS

*The Quiet Title Act, 28 U.S.C. § 2409a*

The Quiet Title Act is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Id.* at 286. Thus, "when the United States has an interest in . . . disputed property, the waiver of sovereign immunity must be found, if at all, within the [Quiet Title Act]." *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir.1994). Thus, if the Quiet Title

---

**4.** We review *de novo* the district court's conclusion that it lacks subject matter jurisdiction. *See Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir.1998).

**5.** For example, the patent conveying Termination Point to Leisnoi provides:
"EXCEPTING AND RESERVING TO THE UNITED STATES from the lands so granted: . . .

Act does not apply, the district court does not have jurisdiction over Leisnoi's claim.[4]

Section § 2409a of the Act provides in pertinent part:

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a *disputed title* to real property in which the *United States claims an interest*, other than a security interest or water rights.

. . . .

(d) The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or *interest claimed by the United States.*

28 U.S.C. § 2409a(a), (d) (emphasis added). These subsections make it clear that two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act:

(1) the United States must claim an interest in the property at issue, and

(2) there must be a disputed title to real property.

If either condition is absent, the Act in terms does not apply and the district court lacks jurisdiction to entertain the action.

A. *The Government Claims an Interest in Termination Point.*

The patents by which the government conveyed Termination Point to Leisnoi expressly reserved to the United States several easements.[5] It is well settled that an easement is an interest in real property. *See Cortese v. United States*, 782 F.2d 845, 850 (9th Cir.1986). Literally construed, then, the first requirement of § 409a is met because the government claims an interest in Termination Point.

The United States, however, interprets this requirement more broadly. It

A one (1) acre site easement upland of the mean high tide line of Middle Bay. . . . The uses allowed are those listed above for a one acre site easement." The uses allowed for this easement are "vehicle parking (e.g., aircraft, boats, ATVs, snowmobiles, cars, trucks), temporary camping, and loading and unloading. Temporary camping, loading or unloading shall be limited to 24 hours."

contends that the Act requires that the United States claim an interest that is adverse to that of the plaintiff. Because Leisnoi does not dispute the government's entitlement to the reserved easements, the United States argues that the requirement is not satisfied. We understand the government's point; the purposes of the Quiet Title Act are served only when there is a degree of adversity between the United States and the plaintiff. This consideration, however, we view as better encompassed by the second requirement—that the title be disputed. § 2409a(a) does not state that the interest claimed by the United States must be adverse to the plaintiff's interest, and we decline to impose that condition.[6]

### B. No Dispute Existed Between the United States and Leisnoi as to the Title to Termination Point at the Time the Complaint was Filed.

Under the Quiet Title Act, a district court has jurisdiction only "to adjudicate a disputed title to real property." We agree that the dispute must be between asserted interests of Leisnoi and the United States; a dispute between Leisnoi and some third party claiming an interest for itself will not satisfy the requirement.[7] The structure of the Quiet Title Act requires this conclusion. Subsection (e) of § 2409a provides:

If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, *the jurisdiction of the district court shall cease* unless it has jurisdiction of the civil action or suit on ground other

than and independent of the authority conferred by section 1346(f) of this title.

28 U.S.C. § 2409a(e) (emphasis added.) This provision makes little sense if initial jurisdiction could be acquired simply because a plaintiff and a third party other than the United States had a dispute over title.

Leisnoi argues that subsection (e) indicates that the Quiet Title Act contemplates initial jurisdiction even when there is no asserted interest of the United States, of any kind, in the land in issue. Subsection (e), however, does not purport to confer jurisdiction; it merely provides that jurisdiction ceases when the United States files a disclaimer of title. Subsection (a) is the one that confers jurisdiction, and it requires that the United States claim an interest and that title be disputed, in order for the United States to be made a defendant in an action. Nothing in subsection (e) qualifies those requirements.

For initial jurisdiction to lie, therefore, there must be a conflict in title between the United States and the plaintiff. The peculiarity of this case is that, although the United States itself did not assert its interest in Leisnoi's title, a third party, Stratman, insisted that the United States had a claim to title. This twist raises the question highly disputed by the parties: Can a third party's assertion that the United States has an adverse claim of title suffice to support initial jurisdiction under the Quiet Title Act? We conclude that a third party's claim of an interest of the United States can suffice if it clouds the plaintiff's title. Any other conclusion would thwart the purposes of the Quiet Title Act; an attributed but infirm interest of the United States could cloud the title but not be subject to challenge.[8] We are aware

---

**6.** Indeed, subsection (e) of § 2409a seems to recognize that the United States may claim an interest in the land and yet not claim an interest adverse to that of the plaintiff; it provides that jurisdiction acquired under § 2409a(a) ceases when the government "disclaims *all* interest in the real property *or interest therein adverse to the plaintiff*." 28 U.S.C. § 2409a(e) (emphasis added).

**7.** In *Lee v. United States*, 629 F.Supp. 721 (D.Alaska 1985) (amended opinion), the district court exercised initial jurisdiction over a claim under the Quiet Title Act even though no one asserted that the United States was entitled to the

land. The plaintiffs claimed, however, that the United States had improperly conveyed the land, and should be required to convey it to the plaintiffs. Jurisdiction was dismissed only after the United States disclaimed all interest. The district court, however, did not discuss or rule on the question of initial jurisdiction, and its silent exercise of such jurisdiction therefore does not constitute authority on that issue. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952).

**8.** The Quiet Title Act was enacted at the suggestion of the Attorney General, who described the uses of actions to quiet title in the equity courts

that waivers of sovereign immunity are to be strictly construed in favor of immunity, *see United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995), but we are also subject to a duty to construe federal statutes in a manner that will accomplish their intended purpose. *See Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983).

▮▮▮ We need not decide, however, whether Stratman's bare assertion of United States title, combined with his unreviewed filing of a lis pendens, clouded Leisnoi's title so as to support initial jurisdiction under the Quiet Title Act. At the time Leisnoi filed its complaint, the Superior Court of Alaska had ruled against Stratman's claim, and had entered judgment barring Stratman from asserting claims for himself or others. *See Bank of Hemet v. United States,* 643 F.2d 661, 665 (9th Cir.1981) (waiver of sovereign immunity must be determined as of date complaint is filed). The judgment had expressly removed any cloud that Stratman had placed on the title. This judgment, although on appeal, was still in effect at the time the district court dismissed Leisnoi's action under the Quiet Title Act. Although we do not preclude a third party from raising a claim of the United States sufficient to support initial jurisdiction under the Quiet Title Act, Stratman's bare assertion in the face of a state Superior Court decision to the contrary clearly does not suffice.

At the time the complaint was filed, therefore, and indeed until well after the district court had dismissed the action, there was no colorable conflict between an interest of the United States and an interest of Leisnoi in Termination Point. The district court accordingly did not err in dismissing the case for lack of initial jurisdiction under § 2409a(a).

▮▮▮ The situation has changed dramatically since the district court acted. The Alaska Supreme Court subsequently vacated the Superior Court's decision and directed that a stay be entered until Stratman's decertification action was completed. *Stratman v. Leisnoi, Inc.,* 969 P.2d 1139 (Alaska 1998). The Alaska Supreme Court concluded that, if the decertification action were decided adversely to Leisnoi, the United States might reacquire Leisnoi's interest in the lands. It ordered the *lis pendens* to remain in effect to warn prospective purchasers of that eventuality. *Id.* at 1143. Leisnoi argues with great force that this action of the Supreme Court of Alaska clouds its title with an asserted interest of the United States.[9] We need not rule on that issue, however, because the Alaska Supreme Court's decision came after the district court's dismissal. We scarcely can hold that, because a colorable dispute arose after the district court acted, that the district court erred in dismissing the action for lack of a colorable dispute of title.

In summary, at the time the complaint was filed, there was no "disputed title to real property" as between Leisnoi and the United States. That being so, the district court did

of England. For example, "one who feared that an outstand[ing] deed or other interest might cause a claim to be presented in the future could maintain a suit to remove a cloud on title." H. Rep. R. 92–1559, *reprinted at* 1972 U.S.C.C.A.N. 4547, 4554. The Attorney General recommended legislation because "[t]he doctrine of sovereign immunity presently prevents comparable suits from being brought against the United States," and that "many situations exist where questions of title to real property cannot be determined at the present time unless the United States itself brings suit." *Id.* The bill was enacted substantially in the form proposed by the Attorney General.

9. At oral argument, the United States contended, also with great force, that its conveyance of land to Leisnoi has become incontestable and could not be revoked even if Leisnoi lost the decertifi-

cation action. It contends that Stratman lacks standing to challenge the patents, and that the United States would be barred by a six-year limitation from suing to recover the land. *See* 43 U.S.C. § 1166.

The fact that the decision of the Alaska Supreme Court may have been erroneous, however, does not prevent it from clouding Leisnoi's title. Nor would that cloud necessarily disappear even if we stated our agreement with the government's view. *See Totemoff v. State,* 905 P.2d 954, 963 (Alaska 1995) ("[T]his court is not bound by decisions of federal courts other than the United States Supreme Court on questions of federal law"). On the other hand, a district court's confirmation of a disclaimer by the United States, now and forever, of all right and title to Termination Point would, in all likelihood, serve as a document of title clearing the cloud on Leisnoi's title.

not err in dismissing the action for lack of jurisdiction.

## CONCLUSION

The district court did not err in holding that it lacked jurisdiction to entertain Leisnoi's claim.

**AFFIRMED.**

GRABER, Circuit Judge, specially concurring:

I concur in the holding of the majority. The district court lacked jurisdiction to entertain plaintiff's action; dismissal, therefore, was proper.

I write separately because I disagree with the majority's "conclu[sion] that a third party's claim of an interest of the United States can suffice [to support initial jurisdiction under the Quiet Title Act] if it clouds the plaintiff's title." (Slip opinion at 2409.) That conclusion (which presumably is designed to encourage the district court to take jurisdiction if plaintiff files a new action, alleging that the Alaska Supreme Court's decision clouds title) is inconsistent with the statute and with precedent.

§ 2409a(a) of 28 U.S.C. confers jurisdiction only over actions "to adjudicate a disputed title to real property in which *the United States claims* an interest." (Emphasis added.) The clear implication of that wording is that the dispute must be between the United States and the plaintiff and that the United States must claim the interest on its own behalf. § 2409a(e) provides that, when the United States disclaims interest, jurisdiction ceases. The relevant actor is, again, the United States. Accordingly, the statute does not give a district court jurisdiction over disputes in which any third party, but not the United States itself, claims that the United States has an interest in the property. Even if § 2409a were ambiguous, we are obliged to "constru[e] ambiguities in favor of immunity." *United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995).

Precedent, too, requires a dispute between the United States and the plaintiff to establish subject matter jurisdiction under the Quiet Title Act. § 2409a "permits the government to be named as a defendant whenever it claims an interest* in real property that is 'adverse' . . . to that of the plaintiff." *United States v. Bedford Assocs.,* 657 F.2d 1300, 1316 (2d Cir.1981) (emphasis added). *See also Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) ("Congress intended the QTA to provide the exclusive means by which *adverse* claimants could *challenge the United States' title* to real property.") (emphasis added); *Cadorette v. United States,* 988 F.2d 215, 223 (1st Cir. 1993) (holding that the QTA "authorizes only actions that require courts to adjudicate a *disputed* title to real property in which *the United States claims* an interest.... The words of the statute, taken literally, permit adjudications only when the title or ownership of real property is in doubt.") (emphasis in original; internal quotation marks omitted); *Lee v. United States,* 809 F.2d 1406, 1409–10 (9th Cir.1987) (holding that, for purposes of the statute of limitations under § 2409a, a claim accrues when the claimants should have realized that the United States had a *conflicting claim* to the property); *Ginsberg v. United States,* 707 F.2d 91, 93 (4th Cir.1983) (stating that the plain meaning of the phrase "disputed title to real property" in § 2409a conveys Congress' intent to include only situations in which the United States claims an interest that "casts doubt on the title or ownership of the property"); *Knapp v. United States,* 636 F.2d 279, 283 (10th Cir.1980) (stating that, for purposes of the statute of limitations under § 2409a, "[a]ll that is necessary [for accrual] is a reasonable awareness that *the Government* claims some interest *adverse* to the plaintiff's") (emphasis added). The foregoing cases make clear that, for the QTA to confer jurisdiction, the plaintiff and the government must dispute the government's claimed interest. The reasoning of those cases is persuasive, because the statute limits jurisdiction to property *disputes* with the United States.

In addition to fitting uneasily the statute and precedent, the majority's approach is ill suited to the premise of certainty that underlies the QTA. The QTA assumes that the district court can tell, by looking at the pleadings, whether it has jurisdiction. The practical consequence of the majority's approach is to remove that certainty by creat-

ing a vague distinction between a "bare assertion," which does not support jurisdiction (slip opinion at 2410), and a "colorable conflict," *id.*, which does. I have found neither statutory nor precedential support for such a distinction.

For the foregoing reasons, I concur in the result, but not in the majority's analysis.